UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KAREEMA NEVELS,

                         Plaintiff,

   -against-

ASSOCIATED CREDIT SERVICES, INC.,

                         Defendant.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
25-CV-5692(GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this action arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1682 *et seq.*, and New York General Business Law § 349, on referral from the Honorable Gary R. Brown for Report and Recommendation,[1] is Defendant Associated Credit Services, Inc.'s ("Defendant" or "ACS") motion to dismiss Plaintiff Kareema Nevels's ("Plaintiff" or "Nevels") Amended Complaint pursuant to Rule 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [30]. Nevels opposes the motion. DE [30-3]. For the reasons set forth herein, the Court respectfully recommends that the motion to dismiss be granted for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The Court does not consider the merits of Plaintiff's claims.

---

[1] By way of a December 12, 2025 Electronic Order, Judge Brown referred all dispositive pre-trial motions to this Court for report and recommendation.

## I.    BACKGROUND

### A.    <u>Relevant Facts</u>[2]

Plaintiff is a resident of West Babylon, New York, and a "consumer" as defined by 15 U.S.C. § 1682a(3).  *See* Amended Complaint ("Am. Compl."), DE [6], ¶ 4.  ACS is a Massachusetts corporation with a principal place of business and headquarters located at 3 Highwood Drive, Suite 102e, Tewksbury MA 02062.  *Id.* at ¶ 7.  Plaintiff alleges that ACS "regularly collect[s] or attempt[s] to collect consumer debts and [is] a 'debt collector' as defined by the FDCPA, 15 U.S.C. § 1682a(6)."  *Id.* at ¶ 8.

On or about August 18, 2025, Nevels received a letter from ACS (the "Collection Letter") seeking to collect a debt (the "Debt") allegedly owed to non-party TD Bank, N.A. ("T.D. Bank").  *Id.* at ¶ 23; Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."), DE [30-2], Ex. A.[3]  Nevels does not allege that the Debt was invalid or that she received the Collection Letter in error.  Rather, she alleges that the Collection Letter "failed to explicitly identify the current creditor to whom the alleged debt was owed, leaving [her] uncertain as to the identity of the party legally entitled to collect the debt."  Am. Compl. ¶ 25.  Nevels further alleges

---

[2] The facts are drawn from the Amended Complaint and are accepted as true for purposes of this Report and Recommendation.  *Trade Pay LLC v. Horowitz*, No. 21-CV-442(ENV)(ARL), 2023 WL 12030712, at *1 n.1 (E.D.N.Y. Oct. 5, 2023) ("Because the instant motion is a motion to dismiss, all facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor.").

[3] Although Nevels did not submit the Collection Letter with her Amended Complaint, she relies upon it heavily and it is integral to her claims.  ACS submitted the Collection Letter with its motion, and the Court will consider it where necessary.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[T]he Court may consider documents attached to the complaint, documents incorporated by reference therein, or documents that the complaint 'relies heavily upon' and are 'integral' to the complaint, even if not incorporated by reference.") (internal citation omitted).

that the Collection Letter "failed to provide a clear itemization of the alleged debt, including the original principal amount, any accrued interest, fees or payments." *Id.* at ¶ 26. Nevels claims that the Collection Letter "caused distress and anxiety," and forced her to "expend time and emotional energy deciphering confusing and potentially false information." *Id.* at ¶ 31(B)-(C). On August 19, 2025, Nevels sent ACS a "written refusal-to-pay notice to prevent further anxiety-triggering communications." *Id.* at ¶ 30.

### B.    Procedural Background

By way of a Complaint ("Compl.") dated October 10, 2025, Plaintiff commenced this action solely against Credit Control Services, Inc. d/b/a Credit Collection Services, Inc. ("CCS"). DE [1]. On October 16, 2025, Nevels filed the Amended Complaint, which is the operative pleading, against both CCS and ACS. DE [6]. On February 5, 2026, Plaintiff voluntarily dismissed her claims against CCS with prejudice, leaving ACS as the only remaining Defendant. DE [24]. Plaintiff invokes Federal Court jurisdiction pursuant to 28 U.S.C. § 1331. Although Nevels alleges that she and ACS are citizens of different states, there is no discussion as to whether diversity jurisdiction exits for purposes of adjudicating her state law claims.

Plaintiff alleges that ACS violated 15 U.S.C. §§ 1682e & 1682g. DE [6]. On February 19, 2026, ACS filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c), claiming that Plaintiff lacks standing to bring her claims in Federal Court and that, even if she had standing, her allegations are deficient as a matter of law. DE ]30]. For the reasons set forth herein, the Court concludes that

3

Nevels lacks standing and recommends dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and, for that reason, does not address the merits of her claims against ACS.

## II.    LEGAL STANDARD

### A.    <u>Fed. R. Civ. P. 12(b)(1)</u>

Pursuant to Fed. R. Civ. P. 12(b)(1), a district court may dismiss an action when it "lacks the statutory or constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotations omitted). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113). "A complaint dismissed for lack of Article III standing should be without prejudice because the court is without subject matter jurisdiction." *Santana v. Take Two Interactive Software, Inc.*, 717 F. App'x 12, 17 (2d Cir. 2017); *see John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice.").

## B.    FDCPA Legal Standard

Relevant here, the FDCPA prohibits:

> (1) [t]he false representation of . . . the character, amount, or legal status of any debt . . . (10) [t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; . . . [and] (11) [t]he failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. §§ 1682e(2)(A), (10), (11); *see Corwise v. FMS Invest. Corp.*, 758 F. App'x 213, 214 (2d Cir. 2019) ("The FDCPA prohibits any false, deceptive, or misleading representations or means in connection with the collection of any debt.") (internal quotation omitted).

The FDCPA further requires that a debt collector, such as ACS, provide in its initial communication (or in a communication within five days thereof), among other things:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; and (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector . . . .

15 U.S.C. § 1682g(a).

## III.    DISCUSSION

Plaintiff asserts three causes of action against ACS:  (1) violations of the FDCPA pursuant to 15 U.S.C. §§ 1682e(2)(A), 1682g(a)(1), 1682g(a)(2), and 1682g(a)(3); (2) violation of N.Y. Gen. Bus. Law § 349; and "intrusion upon seclusion"

under New York common law.  Am. Compl. ¶¶ 38-62.  As a threshold issue, however, ACS claims that Nevels lacks standing to pursue her claims in Federal Court.  The Court agrees.

### A.      Plaintiff Lacks Standing

"Article III limits federal judicial power to 'Cases' and 'Controversies,' and standing to sue 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92 (2d Cir. 2019).  To establish standing, "a plaintiff must show (i) that [she has] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 2136 (1992)); *see Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229, 247 (E.D.N.Y. 2024) ("Standing, as required by Article III, requires a plaintiff to show (1) an injury in fact, (2) a causal connection between that injury and the conduct at issue, and (3) a likelihood that the injury will be redressed by a favorable decision.") (internal quotations omitted).  Pursuant to *TransUnion*, a plaintiff's asserted injury must bear a "close relationship" to the harm recognized by the purported common law analogue. *Obstfeld v. Unifin, Inc.*, 774 F. Supp. 3d 497, 504 (E.D.N.Y. 2025).

6

### 1.    Emotional Injury

Initially, Nevels alleges that the Collection Letter caused her "distress and anxiety," "[e]motional distress and shock," and "loss of peace of mind and exacerbation of a documented anxiety condition."  Am. Compl. ¶¶ 31(A)-(B), 33. Courts have explicitly held that such allegations are insufficient to allege an injury-in-fact for purposes of establishing Article III standing under the FDCPA.  *See, e.g.*, *Dacosta v. Assoc. Credit Servs., Inc.*, 24-CV-4833(HG)(LB), 2024 WL 3966098, at *2 (E.D.N.Y. Aug. 28, 2024) (holding that the plaintiff lacked standing where he alleged that he "suffered from anxiety, time wasted, mental headaches and emotional distress") (internal quotation omitted); *Clarke v. McCabe, Weisburg & Conway, LLC*, No. 22 Civ. 3289(RPK)(PK), 2022 WL 3030347, at *2 (E.D.N.Y. Aug. 1, 2022) ("Alleging that a debt collection mailing confused or misled the plaintiff is also insufficient to confer standing, as 'the state of confusion is not itself an injury [for purposes of Article III].'"); *Nojovits v. Ceteris Portfolio Servs., LLC*, No. 22-CV-2833(PKC)(CLP), 2022 WL 2047179, at *2 (E.D.N.Y. June 7, 2022) (finding no standing where the plaintiff alleged "fear, anxiety, stress, increased heartrate, and difficulty with sleep" from receiving debt collection letter); *Wolkenfeld v. Portfolio Recovery Assocs., LLC*, No. 22-CV-1156(PKC)(CLP), 2022 WL 1124828, at *2 (E.D.N.Y. Apr. 14, 2022) (finding no standing where the plaintiff suffered "emotional harm"); *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 144 (E.D.N.Y. 2021) ("Multiple courts have found alleged confusion to be insufficient for standing in the FDCPA context."); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668

(7th Cir. 2021) (rejecting "stress," "anxiety," and "uncertainty" as bases for FDCPA standing); *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (holding that the plaintiff's injuries could not create standing "[b]ecause bare allegations of confusion and anxiety do not qualify as injuries in fact"). Accordingly, Nevels's alleged emotional harms are insufficient to confer standing.

### 2. Plaintiff Does Not Allege An Informational Injury

Alternatively, while the Court concludes Nevels lacks standing in the first instance, she further fails to allege an informational injury. Although Plaintiff does not identify it as a damage in the Amended Complaint with respect to her FDCPA claim, the Court addresses whether Nevels alleges an "informational injury" for purposes of establishing Article III standing because she is *pro se* and raises the issue in her opposition papers. *See* Plaintiff's Opposition to Motion to Dismiss ("Pl.'s Opp'n"), DE [30-3], at 2. Nevels claims she suffered an "informational injury" because ACS "failed to clearly disclose information required by statute and provided misleading instructions that interfered with [her] ability to exercise validation and dispute rights under 15 U.S.C. § 1692g."[4] *Id.* She asserts that "[d]eprivation of information that a statute requires to be disclosed . . . constitutes a concrete injury." *Id.* at 3. ACS argues that Plaintiff nevertheless lacks standing because she has not articulated either an informational injury or "any downstream consequences . . . ." Def.'s Mem. at 3.

---

[4] Because the Court ultimately recommends dismissal for lack of jurisdiction, the discussion is not intended to opine on the merits of Plaintiffs claims.

While intangible harms of informational injury and fraudulent misrepresentation may constitute a concrete harm for standing purposes, the informational injury must stem from a public disclosure law, and a plaintiff must identify "downstream consequences" from failing to receive the required information. *See TransUnion*, 594 U.S. at 441-42, 141 S. Ct. at 2214.  Relevant here, Courts have specifically held that FDCPA violations, without more, are insufficient to allege an "informational injury" for purposes of establishing standing.  *See Obstfeld,* 774 F. Supp. 3d at 504 (quoting *Manzanarez v. Madera Collection Servs.*, 722 F. Supp. 3d 1074, 1080 (E.D. Ca. 2024) ("[T]he FDCPA does not confer a right of informational injury.")*.*   The Second Circuit has held that to show "downstream consequences," a plaintiff must show that he has "an interest in using the information . . . beyond bringing [his] lawsuit." *Obstfeld*, 774 F. Supp. 3d at 503-04 (E.D.N.Y. 2025) (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)).

Plaintiff does not allege downstream consequences or that she has an interest in using the information other than to bring this action – her claim therefore again fails as a matter of law.  *See, e.g.*, *TransUnion*, 594 U.S. at 441-42, 141 S. Ct. at 2190; *Tschoe v. Monarch Recovery Mgmt., Inc.* No. 20 Civ. 7331(PGG), 2024 WL 2834270, at *5  (S.D.N.Y. May 31, 2024) (holding the plaintiff lacked standing where she did not allege "adverse effects" as a result of the collection letter and did not allege that the debts were disputed); *Manzanarez*, 722 F. Supp. 3d at 1080 ("[T]he FDCPA does not confer a right of informational injury.").

Accordingly, the Court respectfully recommends that Plaintiff's claim against ACS arising under the FDCPA be dismissed due to her lack of Article III standing. *TransUnion*, 594 U.S. at 441-42, 141 S. Ct. at 2190; *Monarch Recovery Mgmt., Inc.*, 2024 WL 2834270, at *5.

### C.   State Law Claims

Nevels also asserts causes of action against ACS arising under New York law for:  (1) violation of N.Y. Gen. Bus. Law § 349, and (2) "intrusion of seclusion."  Am. Compl. ¶¶ 48-62.  Having recommended that Plaintiff's federal claim be dismissed for lack of standing, the Court further recommends that the Court declines to exercise supplemental jurisdiction over her state law causes of action and that those be dismissed as well.[5]  *See Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 337 (2d Cir. 2011) (noting that the Second Circuit has "generally held that where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims"); *Turner v. New York Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d 161, 171 (E.D.N.Y. 2015) (declining to exercise supplemental jurisdiction over state law claims when all federal law claims had been dismissed).

### D.   Leave to File Second Amended Complaint

A court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend is left to a court's discretion and a court cannot err

---

[5] Plaintiff invokes this Court's federal jurisdiction pursuant to 28 U.S.C. § 1331 "because the complaint alleges a federal claim."  *See* Am. Compl. ¶ 1.  She does not allege diversity jurisdiction and the Court declines to opine as to whether such jurisdiction exists.

10

in exercising that discretion by "failing to grant a request that was not made." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013) (affirming dismissal . . . where plaintiff "never made a formal motion to amend" and opposition to defendant's motion to dismiss "failed to request that the amended complaint be dismissed without prejudice") (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)). *Mallett v. Town of Huntington*, 799 F. Supp. 3d 117, 128 (E.D.N.Y. 2025)  ("The Court accordingly finds no reason to grant Plaintiff a further opportunity to amend, particularly when Plaintiff herself did not request such relief.").  Although Plaintiff does not seek leave to file a second amended complaint, given her *pro se* status and that dismissal for lack of standing is typically without prejudice, *see John*, 858 F.3d at 726, the Court respectfully recommends that Nevels be granted leave to file second amended complaint.  *See Stevens v. Tomlin, No.* ("Given Plaintiff's pro se status, the Court grants him leave to file a second amended complaint . . . .").

## IV.    CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that ACS's motion to dismiss be granted in its entirety, and that Plaintiff's Amended Complaint be dismissed.  As the Court has not considered the merits of any cause of action, and given Plaintiff's *pro se* status, the Court recommends that dismissal be without prejudice.  *John*, 858 F.3d at 735; *Steinmetz*, 2022 WL 2441238, *4 ("Where a complaint is dismissed for lack of Article III standing, the dismissal mist be without prejudice, rather than with prejudice.") (internal quotation omitted).

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served by electronic filing on the date below.  ACS is instructed to serve Nevels with a copy and file proof of service via ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days of service.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See Ferrer v. Woliver*, No. 05-CV-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            May 21, 2026

                                    /s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge